UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
TRUSTEES OF THE IRON WORKERS    )
DISTRICT COUNCIL OF NEW         )
ENGLAND PENSION, HEALTH AND     )
WELFARE ANNUITY, VACATION, AND  )
EDUCATION FUNDS, AND OTHER      )
FUNDS                           )
                                )
            Plaintiffs,         )
                                )
v.                              )   Civil Action
                                )   No. 17-10318-PBS
MONADNOCK STEEL & PRECAST LLC;  )
MONADNOCK IRON, LLC; AND MARK   )
AHO                             )
                                )
            Defendants.         )
_____)
```

**MEMORANDUM AND ORDER**

October 13, 2017

Saris, C.J.

**INTRODUCTION**

This is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, to recover delinquent contributions to trust funds administered by Plaintiffs, Trustees of the Iron Workers District Council of New England Pension, Health & Welfare, Annuity, Vacation, Education Funds ("Trustees"). Defendants, Monadnock Steel & Precast LLC ("Monadnock Steel"), Monadnock Iron, LLC ("Monadnock Iron"), and

1

Mark Aho have filed a motion to dismiss or, in the alternative, for summary judgment (Docket No. 8). After hearing, the Court **DENIES** the motion to dismiss and **DENIES** the motion for summary judgment without prejudice.

**FACTUAL BACKGROUND**

When all reasonable inferences are drawn in favor of Plaintiffs, the complaint alleges the following facts.

Defendant Aho owned and managed Monadnock Iron, a limited liability company located in Rindge, New Hampshire, which engaged in steel erection and installation subcontracting. On October 30, 2007, Aho signed a collective bargaining agreement on behalf of Monadnock Iron with local unions ("Iron-CBA"), which required it to make contributions to the Taft-Hartley trust fund administered by Plaintiffs for each hour worked by any employee for pension, health insurance, and other employee benefits. Monadnock Iron was dissolved in July 2011.

In September 2015, to avoid the Iron-CBA, Aho formed Monadnock Steel, located at 52 Whittemore Hill Road, New Ipswich, New Hampshire, which was previously the Registered Office Address provided for the Registered Agent of Monadnock Iron, Aho. Like Monadnock Iron, its principal purposes are steel erection and installation subcontracting. As owner or controller of Monadnock Steel, Aho submits bids to customers, negotiates bid prices, engages in other contract negotiations, hires

employees, and coordinates the work and operation of Monadnock Steel. Operating under Monadnock Steel, Aho refused to pay contributions on at least three construction sites in Massachusetts.

**STANDARD**

When reviewing a motion to dismiss the Court asks "whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff, state a claim for which relief can be granted." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). Plaintiffs' facts, which are taken as true, and the inferences they support must "'plausibly narrate a claim for relief.'" Id. at 71 (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)).

For a claim to be plausible, it must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Germanowski, 854 F.3d at 72 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). However, "a complaint need not plead facts sufficient to make a prima facie case or allege all facts necessary to succeed at trial." Medina-Velázquez v. Hernández-Gregorat, 767 F.3d 103, 108 (1st Cir. 2014). A well-pleaded complaint can go forward even if recovery is unlikely and proof of the necessary facts are unviable. See id. at 109; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007); Ocasio-Hernández v. Fortuño-

Burset, 640 F.3d 1, 12 (1st Cir. 2011). "Ultimately, 'the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint.'" Medina-Velázquez, 767 F.3d at 109 (quoting Ocasio–Hernández, 640 F.3d at 13) (internal brackets removed). The court may take judicial notice of undisputed facts from public records. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss.").

## **DISCUSSION**

Plaintiffs allege that Aho formed Monadnock Steel as an alter ego in order to avoid the contributions under the Iron-CBA. Monadnock Steel, they allege, is substantially similar to Monadnock Iron with respect to business purposes, ownership, management, customers, and operations in manner, activity, and geographic area. Defendants contend that Monadnock Steel was formed four years after Monadnock Iron by Aho's son-in-law and that it is not an alter ego. They deny that Aho owns or controls Monadnock Steel. Both sides have submitted warring affidavits. Because there has been no discovery, the Court will address the motion to dismiss, and defer ruling on summary judgment.

Under the alter ego doctrine, "in certain situations one employer entity will be regarded as a continuation of a

predecessor, and the two will be treated interchangeably for purposes of applying labor laws." NLRB v. Hosp. San Rafael, Inc., 42 F.3d 45, 50 (1st Cir. 1994). The nature of an alter ego claim is that the new or successor company operates as a straw man or as a "disguised continuance" in order to avoid liability. Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106 (1942). Alter ego claims can "prevent the evasion of pension obligations, thereby protecting employee benefits and denying employers an unearned advantage in [their] labor activities." Groden v. N&D Transp. Co., 866 F.3d 22, 27 (1st Cir. 2017) (internal citations omitted). Several factors are used to determine whether an alter ego exists including "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus — i.e., whether the alleged alter ego entity was created and maintained in order to avoid labor obligations." Id. at 27 (internal citations and quotations omitted). However, "[n]o one factor is controlling, and all need not be present to support a finding of alter ego status." C.E.K. Indus. Mech. Contractors, Inc. v. NLRB, 921 F.2d 350, 354 (1st Cir. 1990).

When assessing continuity of ownership, courts consider family relationships between the two companies and who is exerting financial control. See Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 309

5

(1st Cir. 1998) ("Continuity of ownership has been found to exist when the nonsignatory and signatory companies are owned by members of the same family . . . . This [is] especially telling when the named owners of the nonsignatory have little responsibility or control over the management of the company, and do not have a financial investment in the company.").

A hiatus in the time period between the operations of the two companies is relevant to whether there is a sufficient continuity. However, "such a hiatus is only one factor in the 'substantial continuity' calculus and thus is relevant only when there are other indicia of discontinuity." Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 45 (1987) (involving a seven-month hiatus). "[I]f other factors indicate a continuity between the enterprises, and the hiatus is a normal start-up period, the 'totality of the circumstances' will suggest that these circumstances present a successorship situation." Id.

Moreover, substance trumps form in a determination of the similarity of the purposes and management. When there has been a "a mere technical change in the structure or identity . . . without any substantial change in its ownership or management . . . courts have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and contractual obligations of the predecessor." Hosp. San Rafael, 42 F.3d at 51 (quoting Howard Johnson Co. v.

6

Hotel Employees, 417 U.S. 249, 259 (1974)). Courts examine whether the business "basically has the same body of customers" to determine alter ego status. Fall River, 482 U.S. at 43. Finally they look at whether defendants harbor anti-union animus, which refers to "whether the alleged alter ego entity was created and maintained in order to avoid labor obligations." Mass. Carpenters, 139 F.3d at 308 (quoting Hosp. San Rafael, 42 F.3d at 50).

Looking at the totality of the circumstances, the Court concludes that the complaint alleges sufficient facts to survive the motion to dismiss. It is true that there was a four year time lapse between the date Monadnock Iron dissolved and when Monadnock Steel was formed, militating against continuity. However, a hiatus of a substantial period is not an ironclad bar to alter ego status. Rather, a significant hiatus "is only one factor" in the alter ego analysis. Fall River, 482 U.S. at 45; see Straight Creek Mining, Inc. v. NLRB, 164 F.3d 292, 296 (6th Cir. 1998) (holding 54-month hiatus did not destroy continuity in light of other circumstances). That is, Monadnock Steel was formed by Mr. Aho's son-in-law, and has an address which was the registered address of Monadnock Iron's registered agent, Mr. Aho. Monadnock Iron and Monadnock Steel conduct the same business operations and purposes: they both perform steel and precast erection. While there are no specific allegations to

support ownership, the Plaintiffs allege Mr. Aho manages and operates Monadnock Steel, in areas like hiring and work coordination. Both companies appear to have similar geographic ties and similar customers. Finally, and of significant weight, Plaintiffs allege anti-union animus by pointing out there was a lawsuit involving failure to make contributions under ERISA by another company, Monadnock Erectors, owned by Aho, who allegedly set up Monadnock Iron as an alter ego.[1]

When these allegations are taken together, Plaintiffs state a plausible claim.

**ORDER**

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss, and the motion for summary judgment is **DENIED** without prejudice (Docket No. 8).

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge

---

[1] There is also a legal dispute as to whether the CBA's "work preservation clause" is binding even if there is no alter ego status. Plaintiffs contend no notice of termination was sent so the CBA is still binding. The Court need not address this issue in light of the holding on alter ego status.